UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

**CHAD H. HEISLER,**
on behalf of himself and all others similarly situated,

    Plaintiff,

  v.                                        Case No. 16-CV-1344

**CONVERGENT HEALTHCARE RECOVERIES, INC.,**
And **JOHN AND JANE DOES Nos. 1-25,**

    **Defendants.**

## DECISION AND ORDER ON PLAINTIFF'S
## MOTION FOR CLASS CERTIFICATION

Chad H. Heisler filed a single count complaint against Convergent Healthcare Recoveries, Inc. ("CHRI") alleging that a debt collection letter sent to him violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.* Heisler has filed a motion for class certification. The motion has been fully briefed and is ready for resolution. For the reasons more fully explained below, Heisler's motion is denied.

### FACTUAL BACKGROUND

Heisler allegedly incurred and defaulted on a financial obligation for medical services. (Compl. ¶ 14, Docket # 1.) The alleged debt arose out of a transaction in which the money, property, insurance, or services that were the subject of the transaction were primarily for personal, family, or household purposes and he is a consumer as defined in 15 U.S.C. § 1692a(3). (*Id.* ¶¶ 15, 18.)

Heisler alleges that sometime prior to July 11, 2016, the creditor of the debt assigned, placed, or transferred the debt to CHRI for collection. (*Id.* ¶ 19.) On or about July 11, 2016, CHRI mailed a collection letter (dated July 11, 2016) to Heisler concerning the debt. (*Id.* ¶ 22.) Heisler alleges that the upper right hand side of the letter lists the date, the amount owed, and an "agency account number." (*Id.* ¶ 26.) Underneath the "agency account number" it reads "Re: WF, Inc – Elmwood Mem." (*Id.*) Heisler alleges the letter does not identify the creditor of the alleged debt. (*Id.* ¶ 27.)

Heisler alleges CHRI presumably meant for "Re: WF, Inc – Elmwood Mem" to identify the creditor; however, "WF, Inc – Elmwood Mem" is not the creditor of the debt. (*Id.* ¶¶ 28-29.) Heisler alleges that he does not recognize the name "WF, Inc – Elmwood Mem" and no such corporate entity exists. (*Id.* ¶¶ 30-31.) Heisler alleges the collection letter violates the FDCPA in various ways, including, but not limited to, 15 U.S.C. §§ 1692e, 1692e(10), and 1692g(a)(2). (*Id.* ¶ 46.) Heisler seeks to certify a class of "all persons with addresses in the State of Wisconsin to whom CHRI mailed an initial written communication in an attempt to collect a debt that was not returned as undelivered by the United States Postal Service, which listed 'Re: WF, Inc – Elmwood Mem' as a means for identifying the creditor during the one year immediately preceding the filing of this and ending 21 days thereafter." (*Id.* ¶ 36.)

**ANALYSIS**

There are four threshold requirements applicable to class certification: "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical

of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

Once numerosity, commonality, typicality, and adequacy of representation are satisfied, "the potential class must also satisfy at least one provision of Rule 23(b)." *Rosario v. Livaditis*, 963 F.2d 1013, 1017 (7th Cir. 1992). Here, the applicable provision is Rule 23(b)(3), which requires that "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The party seeking class certification bears the burden of showing that certification is appropriate. *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir. 1993).

　　1.　　*Standing*

CHRI argues Heisler lacks standing to represent any putative class because Heisler stated that he never opened the letter at issue. (Defs.' Br. at 14, Docket # 52.) CHRI further argues that standing cannot be predicated upon a bare claim that the FDCPA was technically violated. (*Id.* at 15.) To satisfy Article III standing, a plaintiff must allege that he or she "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).

CHRI relies primarily on the Supreme Court's more recent case on standing, *Spokeo*, in support of its proposition that Heisler lacks standing because he alleges a mere statutory violation. In *Spokeo*, the plaintiff filed a class-action complaint against Spokeo, alleging that it willfully failed to comply with Fair Credit Report Act ("FCRA") requirements by

3

publishing inaccurate information about him. 136 S. Ct. at 1544. He asserted that his Spokeo profile improperly indicated "that he is married, has children, is in his 50's, has a job, is relatively affluent, and holds a graduate degree," though he did not allege that this false information was actually used to his detriment. *Id.* at 1544, 1546.

The Court began its analysis by reviewing the general principles of Article III standing, specifically, the injury-in-fact requirement. It noted that while Congress has identified and elevated certain intangible harms to constitute concrete injuries, "a bare procedural violation, divorced from any concrete harm, [is insufficient to] satisfy the injury-in-fact requirement." *Id.* at 1549. Applying these standards, the Court recognized that in passing the FCRA, Congress "plainly sought to curb the dissemination of false information by adopting procedures designed to decrease that risk." *Id.* at 1550. Yet, the Court concluded the plaintiff could not satisfy the demands of Article III by alleging a bare procedural violation of the statute that did not result in harm or present any material risk of harm. *Id.* The Court did not find, however, that the plaintiff lacked standing. Rather, the Court remanded the case to the Ninth Circuit to determine whether the plaintiff's allegations of a procedural violation "entails a degree of risk" sufficient to meet the concreteness requirement. *Id.*

In *Gubala v. Time Warner Cable, Inc.*, 846 F.3d 909, 910 (7th Cir. 2017), the plaintiff filed a class action lawsuit against a cable company, alleging that the company violated the Cable Communications Policy Act ("CCPA") when he discovered the company had failed to destroy his personally identifiable information nearly ten years after he cancelled his cable subscription. He asserted that "the retention of the information, on its own, has somehow violated a privacy right or entailed a financial loss." *Id.* The court recognized that there was

a risk of harm but found that Gubala had "failed to show . . . even a remote probability" that Time Warner's conduct was harmful to him. *Id.* at 912. The court held that Gubala lacked standing to bring his suit, due to "the absence of allegation let alone evidence of any concrete injury inflicted or likely to be inflicted on the plaintiff as a consequence of Time Warner's continued retention of his personal information." *Id.* at 913.

Chief Judge William Griesbach addressed the issue of standing in the context of the FDCPA. In *Pogorzelski v. Patenaude & Felix APC*, No. 16-CV-1330, 2017 WL 2539782, at *4 (E.D. Wis. June 12, 2017), the plaintiff brought suit against the defendants for violations of the FDCPA. She alleged that she received a debt collection letter that contained a statement "If you wish to avoid further collection activity, please contact us at (866) 606–3290." She alleged that this statement was false, deceptive, and misleading because it suggests to an unsophisticated consumer that the only way to prevent further collection activity was to call the defendant. The plaintiff alleged that the defendant denied her the right to certain information due to her under the FDCPA. She sought statutory damages, attorneys' fees, and costs on behalf of herself and a putative class pursuant to 15 U.S.C. § 1692k.

The defendants moved to dismiss the complaint, arguing that the plaintiff lacked standing to sue because she failed to allege that she suffered a concrete injury. Citing to *Spokeo*, Judge Griesbach found that the plaintiff alleged a concrete injury-in-fact. Judge Griesbach began by recounting the history of the FDCPA, which was intended by Congress to eliminate abusive debt collection practices by debt collectors and to protect consumers against debt collection abuses. 2017 WL 2539782, at *3. He noted that the FDCPA creates a private right of action for consumers who receive communications that violate the Act so that they may vindicate their rights and stated that the FDCPA, "in essence 'enlists the

5

efforts of sophisticated consumers . . . as 'private attorneys general' to aid their less sophisticated counterparts, who are unlikely themselves to bring suit under the Act, but who are assumed by the Act to benefit from the deterrent effect of civil actions brought by others.'" *Id.* (quoting *Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 91 (2d Cir. 2008)).

Judge Griesbach found that the FDCPA was intended to deter debt collectors, like the defendants, from making false representations to unsophisticated consumers, like the plaintiff. *Id*. He found that the defendants' alleged violation of the plaintiff's right to receive certain required information under the FDCPA was not hypothetical or uncertain and although her alleged injury may not have resulted in tangible economic or physical harm, the "informational injury" the plaintiff alleged was "more than a mere procedural violation." *Id.*

The defendants relied on *Spokeo* and *Gubala* for support that the plaintiff lacked standing. Judge Griesbach noted that "an argument can be made that the Supreme Court's decision in *Spokeo* redefined the injury-in-fact requirement by requiring a complaint to allege that a statutory violation caused a 'material risk of harm' before a plaintiff may bring a suit." *Id.* at *4. However, Judge Griesbach also noted that numerous other courts, both from this circuit and from around the country, have rejected *Spokeo*-based standing challenges in the context of FDCPA violations. *See id.* (collecting cases). He found that the *Spokeo* Court "did not categorically preclude individuals from asserting that a defendant violated statutorily-mandated procedures. Instead, it clarified that only certain violations may create a concrete injury necessary for standing." *Id.* He found that there was "a meaningful distinction between a violation of a specific statutory interest recognized by Congress, such as the right

6

to truthful information in debt collection communications, and in a procedural infraction that may not materially harm that interest, such as an incorrect zip code." *Id*

Judge Griesbach further found that while the provisions at issue in *Gubala* imposed a "host of technical, procedural requirements," the FDCPA's purpose is to "protect consumers from certain harmful debt collection practices and create a private right of action for consumers, namely, the right to be free from 'false, deceptive or misleading' information." *Id.* at *5. He found that the collection letter at issue that allegedly contained false information was precisely the type of harm Congress "sought to curb" in enacting the FDCPA. *Id.* (citing *Spokeo*, 136 S. Ct. at 1550). Thus, Judge Griesbach found the plaintiff need not allege any additional harm beyond the statutory violation identified by Congress and thus she pled a concrete injury-in-fact and had standing to sue. *Id.*

I find Judge Griesbach's reasoning persuasive and adopt it in this case. Heisler alleges that CHRI violated his rights under the FDCPA by failing to identify the creditor to whom the debt was owed and by using false, deceptive, and misleading representations or means in connection with the collection of the debt. (Compl. ¶ 46.) As in *Pogorzelski*, Heisler's allegations that the debt collection letter sent by CHRI failed to identify the creditor of the debt in violation of his rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing. As to CHRI's allegation that Heisler never opened the letter, this fact is irrelevant as Heisler seeks statutory damages, "a penalty that does not depend on proof that the recipient of the letter was misled." *See Bartlett v. Heibl*, 128 F.3d 497, 499 (7th Cir. 1997). Thus, I find that Heisler has standing to sue in this case.

*2.  Class Certification*

The crux of CHRI's argument is that Heisler is not an adequate class representative because he is subject to a defense that could not be sustained against other class members, namely judicial estoppel. (Defs.' Br. at 8-12, Docket # 52.) CHRI argues that on September 26, 2016, Heisler filed for Chapter 7 bankruptcy protection and identified "Convergent Healthcare Recoveries, Inc." as an entity attempting to collect a debt of $250.00 owed to "Elmbrook Memorial." (Defs.' Br. at 4.) CHRI argues that ten days later, Heisler filed this FDCPA action alleging that he was confused by CHRI's abbreviation of Elmbrook Memorial. (*Id.* at 5.) CHRI argues Heisler's bankruptcy was formally discharged. (*Id.* at 6.)

CHRI argues Heisler should be judicially estopped from pursuing this action because he failed to list this class action as an asset and showed no signs of being confused by CHRI's letter, namely, he was able to identify Elmbrook Memorial as a creditor and CHRI as the entity collecting the account on Elmbrook Memorial's behalf. (*Id.* at 9-10.) Heisler was then able to secure a discharge of the debt. (*Id.* at 10.)

Lawsuits, including the claims in this case, constitute "property" under the bankruptcy estate. 11 U.S.C. § 541(a)(1) (stating the bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case"). Debtors have a continuing duty to schedule newly acquired assets while the bankruptcy case is open. *Rainey v. United Parcel Serv., Inc.*, 466 F. App'x 542, 544 (7th Cir. 2012) (unpublished).

Judicial estoppel is an equitable doctrine, invoked to protect the integrity of the courts by preventing a party who prevails on one ground in a lawsuit from repudiating that ground in a subsequent lawsuit. *See De Vito v. Chicago Park Dist.*, 270 F.3d 532, 535 (7th Cir. 2001). In the context of a bankruptcy, judicial estoppel is used to bar a debtor from pursuing

8

a cause of action after the bankruptcy ends that he or she failed to disclose to the bankruptcy court during the course of the bankruptcy proceedings. *See Cannon-Stokes v. Potter*, 453 F.3d 446, 448 (7th Cir. 2006). In other words, a debtor in bankruptcy who denies owning an asset, including a chose in action or other legal claim, cannot realize on that concealed asset after the bankruptcy ends. *Id.* Although this doctrine is seemingly harsh, the theory behind it is that it "induces debtors to be truthful in their bankruptcy filings[, which] will assist creditors in the long run (though it will do them no good in the particular case)-and it will assist most debtors too, for the few debtors who scam their creditors drive up interest rates and injure the more numerous honest borrowers." *Id.*

The parties dispute the application of judicial estoppel in this case; however, I need not determine the validity of the defense at this stage. Rather, for purposes of Heisler's motion to certify class, my focus is on whether CHRI has posited "an arguably defense peculiar to" Heisler which may "bring into question the adequacy of the named plaintiff's representation." *See CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 726 (7th Cir. 2011) ("The fear is that the named plaintiff will become distracted by the presence of a possible defense applicable only to him so that the representation of the rest of the class will suffer.") (quotation marks and citation omitted).

Again, CHRI argues that Heisler's cause of action should be barred by judicial estoppel based on actions taken during the course of Heisler's bankruptcy proceedings. Heisler disputes that judicial estoppel applies in his case and raises both factual and legal arguments in support of his position. This judicial estoppel argument is both legally and factually specific to Heisler and his bankruptcy proceedings. Thus, I find that CHRI has presented at least an "arguable" defense to Heisler's claim and therefore conclude that

Heisler is an inadequate representative of the class. *See Randall v. Rolls-Royce Corp.*, 637 F.3d 818, 824 (7th Cir. 2011) ("[N]amed plaintiffs who are subject to a defense that would not defeat unnamed class members are not adequate class representatives."); *see also Boyd v. Meriter Health Servs. Employee Ret. Plan*, No. 10-CV-426-WMC, 2012 WL 12995302, at *11 (W.D. Wis. Feb. 17, 2012), *aff'd sub nom. Johnson v. Meriter Health Servs. Employee Ret. Plan*, 702 F.3d 364 (7th Cir. 2012) (finding the court was "compelled to conclude" the named plaintiff was an inadequate class representative when defendants alleged judicial estoppel due to plaintiff's failure to disclose cause of action during banrkutpcy proceedings).

Because Heisler fails to meet one of the necessary elements for class certification, I need not address the remaining elements.

## CONCLUSION

For the reasons explained in this decision, Heisler has failed to satisfy the requirements of Rule 23(a). Thus, Heisler's motion to certify class is denied.

## ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the plaintiff's motion to certify class (Docket # 33) is **DENIED**.

**IT IS FURTHER ORDERED** that defendant's motion to seal (Docket # 62) is **GRANTED**.

**IT IS FURTHER ORDERED** that defendant's motion for leave to file response to plaintiff's supplemental authority (Docket # 65) is **DENIED AS MOOT**.

Dated at Milwaukee, Wisconsin this 27th day of September, 2018.

                          BY THE COURT:

                          *s/Nancy Joseph*
                          NANCY JOSEPH
                          United States Magistrate Judge