UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

CHAD H. HEISLER, on behalf of himself and all
others similarly situated,

    Plaintiff,

    v.                                                       Case No. 16-CV-1344

CONVERGENT HEALTHCARE RECOVERIES,
INC., and JOHN AND JANE DOES NUMBERS 1
THROUGH 25.

    Defendants.

---

## DECISION AND ORDER ON PLAINTIFF'S MOTION
## FOR SUMMARY JUDGMENT AS TO DEFENDANTS'
## JUDICIAL ESTOPPEL DEFENSE

---

Chad H. Heisler brought this class action complaint against Convergent Healthcare Recoveries, Inc. ("Convergent"), alleging that Convergent sent a debt collection letter that violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq*. ("FDCPA"). (Docket # 1.) In its answer, Convergent asserted as an affirmative defense that Heisler is judicially estopped from claiming or recovering sums in excess of amounts claimed in his separate action in Bankruptcy Court. (Docket # 30 at 18.) I denied Heisler's motion for class certification because Convergent had an arguable judicial estoppel defense to Heisler's claim that was legally and factually specific to Heisler, rendering Heisler an inadequate class representative. (Docket # 68 at 8–10.) Heisler filed a motion for reconsideration, which I denied. (Docket # 74 at 3–6.) Heisler then filed a motion for summary judgment as to the judicial estoppel defense. (Docket # 80.) For the reasons below, Heisler's motion will be granted in part and denied in part.

**UNDISPUTED FACTS**

On September 26, 2016, Heisler, represented by counsel, filed a Chapter 7 bankruptcy petition in the United States Bankruptcy Court for the Eastern District of Wisconsin. *In re Heisler*, Case No. 16-29492-beh (Bankr. E.D. Wis. 2017) (Decl. of Francis R. Greene ("Greene Decl.") Ex. A, Docket # 82-1). Heisler's Bankruptcy Schedule E/F lists Convergent as a creditor with an unsecured claim. (Greene Decl. Ex. B, Docket # 82-2; Defendants' Response to Plaintiff's Proposed Findings of Fact ("DPFOF") ¶ 4, Docket # 87.) Heisler reported $6,250 worth of property and claimed $6,250 in exempt property, including "2 FDCPA claims against collection agencies" valued at $2,000. (Proposed Findings of Fact ("PFOF") ¶¶ 2–3, Docket # 83; DPFOF ¶ 23.) Heisler did not schedule a class representative incentive reward as an asset in his original bankruptcy petition, although he later amended his schedules to include it. (DPFOF ¶ 19; Plaintiff's Response to DPFOF ("Response to DPFOF") ¶ 19, Docket # 91; Defs.' Br. at 18, Docket # 86.)

Heisler's bankruptcy petition included a notice as required by 11 U.S.C. § 342(b), which states that the petitioner must promptly file detailed information about creditors, assets, liabilities, income, expenses, and general financial condition; warned that the court may dismiss the case if the petitioner does not file the information within the deadlines; and directed petitioners to a website for more information. (DPFOF ¶¶ 20–21.) The bankruptcy petition contained a signed declaration that Heisler had examined the petition; declared under penalty of perjury that the information provided was true and correct; and understood that making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines or imprisonment. (*Id.* ¶ 24.) Heisler's bankruptcy petition also included a signed declaration that he had read the

summary and schedules filed with his declaration and that they were true and correct. (*Id.* ¶¶ 25–26.)

The trustee in Heisler's bankruptcy conducted a § 341 Meeting of Creditors on November 17, 2016. (PFOF ¶ 5, DPFOF ¶ 27.) Convergent did not file a claim. (PFOF ¶ 6.) Heisler attended the § 341 Meeting with his bankruptcy attorney. (DPFOF ¶ 29.) Heisler was under oath during the § 341 Meeting. (*Id.* ¶ 30.) At the § 341 Meeting, Heisler affirmed that he had provided his attorney the information he used to fill out the schedules; he had told his attorney about all his assets, debt, income, and expenses; his attorney had taken all that information and put it in the form of schedules for his review; he had reviewed the schedules before he signed them; and he understood that he signed them under penalty of perjury and knew what that meant. (DPFOF ¶ 31; Decl. of Chirag H. Patel ("Patel Decl.") ¶ 3, Docket # 88.) In response to a statement from the trustee that "[a]pparently your attorney has got an FDCPA claim here," Heisler's bankruptcy attorney stated, "Two claims on this one. This one got down to a solid number." (DPFOF ¶ 32; Patel Decl. ¶ 3.)

On November 18, 2016, the trustee filed its Report of No Distribution, meaning there was no property available for distribution from Plaintiff's bankruptcy estate. (PFOF ¶¶ 7, 14; DPFOF ¶¶ 7, 14.) The trustee reported $6,250 in exempt assets and stated "that there is no property available for distribution from the estate over and above that exempted by law." (PFOF ¶¶ 7–8, DPFOF ¶¶ 7–8.) The relevant portion of the report states in full:

> Chapter 7 Trustee's Report of No Distribution: having been appointed trustee of the estate of the above-named debtor(s), report that I have neither received any property nor paid any money on account of this estate; that I have made a diligent inquiry into the financial affairs of the debtor(s) and the location of the property belonging to the estate; and that there is no property available for distribution from the estate over and above that exempted by law. Pursuant to Fed R Bank P 5009, I hereby certify that the estate of the above-named

> debtor(s) has been fully administered. I request that I be discharged from any further duties as trustee. Debtor appeared. Key information about this case as reported in schedules filed by the debtor(s) or otherwise found in the case record: This case was pending for 2 months. Assets Abandoned (without deducting any secured claims): $ 0.00, Assets Exempt: $ 6250.00, Claims Scheduled: $ 37834.29, Claims Asserted: Not Applicable, Claims scheduled to be discharged without payment (without deducting the value of collateral or debts excepted from discharge): $ 37834.29.

(DPFOF ¶ 33; Greene Decl. Ex. C at 4, Docket # 82-3.)

On January 9, 2017, Heisler, through counsel, filed an Amended Property Schedule in his bankruptcy case. (PFOF ¶ 9.) Heisler's Amended Schedule reported and exempted $11,250 worth of property, including "1 FDCPA claims against collection agencies (up to $1,000 claim) and Class Representative Incentive Reward Case (up to $6000 claim)." (*Id.* ¶ 10.) On January 23, 2017, the Bankruptcy Court entered an order discharging Heisler's debts and a final decree closing the case. (*Id.* ¶ 11.)

Convergent asserts that on or about January 24, 2018, while this case was referred to Magistrate Judge David E. Jones for mediation, Heisler issued a class settlement demand in which he requested a $10,000 class incentive award. (DPFOF ¶ 34.) Heisler asserts that the $10,000 demand was a scrivener's error that he immediately took steps to correct, notifying the court and opposing counsel that Heisler was seeking a $6,000 incentive award. (Response to DPFOF ¶ 34; Decl. of Andrew T. Thomasson ¶ 4, Docket # 92.)

## SUMMARY JUDGMENT STANDARD

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the

4

applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. The mere existence of some factual dispute does not defeat a summary judgment motion. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, the court must draw all inferences in a light most favorable to the nonmovant. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment, a party cannot rely on his pleadings and "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Services, Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

## ANALYSIS

Heisler moves for summary judgment as to Convergent's judicial estoppel defense. Heisler bears the burden of proving that, even making all reasonable inferences in Convergent's favor, there are no genuine issues of material fact regarding Convergent's judicial estoppel defense. Convergent has the burden of proof on its judicial estoppel defense, so for that defense to survive this motion, Convergent must produce evidence to reasonably support it. Heisler argues that Convergent cannot meet this burden. (Pl.'s Br. at

5

8–14, Docket # 81.) Convergent argues that Heisler's motion is procedurally improper, or in the alternative, that there are genuine issues of material fact precluding summary judgment. (Docket # 86 at 5–21.)

   *1. Procedural Challenge*

Convergent argues that this motion is procedurally improper because Heisler's motion for class certification was denied on the basis that the judicial estoppel defense was unique to Heisler. (Docket # 86 at 10–14.) Convergent argues that allowing Heisler to proceed on this motion will further multiply the proceedings related to Heisler's individual defense, which is the very harm the policy requiring that class representatives have no unique defenses is meant to avoid. (*Id.* at 10–12.) Convergent states that it was unable to locate any case in which a plaintiff who was denied class representation on the basis of a unique defense was then allowed to litigate that defense on a summary judgment motion to establish adequacy as a class representative. (*Id.* at 11.) Convergent cites a number of cases for its proposition that "the proper remedy following a court's determination of inadequacy is to locate a substitute proposed class representative." (*Id.* at 11–12 (citing *CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721 (7th Cir. 2011); *Robinson v. Sheriff of Cook County*, 167 F.3d 1155, 1158 (7th Cir. 1999); *Wahl v. Midland Credit Mgmt.*, 243 F.R.D. 291, 298 n. 4 (N.D. Ill. 2007).)

While Convergent's arguments have some appeal as a matter of practice, there is no rule prohibiting Heisler from moving for summary judgment on Convergent's defense as it does here. In *CE Design*, the Seventh Circuit vacated the district court's class certification because the class representative was inadequate, and noted that class counsel might yet continue the class action by finding another class member to substitute as representative, but

6

it did not say that substituting a new class representative was the only option. 637 F.3d at 728. The plaintiff in *CE Design* was subject to a unique affirmative defense like Heisler, but he also had credibility problems that summary judgment on the defense would not have cured. Therefore, I do not read *CE Design* as foreclosing the possibility of a class representative curing his inadequacy through a motion for summary judgment on a unique defense. *Robinson* and *Wahl* both confirm that substitution can occur later in a case if it becomes apparent that the representative of the already-certified class is or has become inadequate; that is not the procedural posture of this case.

Convergent also argues that the rule against one-way intervention prevents Heisler from seeking class certification should his motion for summary judgment be granted. (Docket # 86 at 12–14.) The rule against one-way intervention prevents plaintiffs from moving for class certification after acquiring a favorable ruling on the merits of a claim. *Costello v. BeavEx, Inc.*, 810 F.3d 1045, 1057 (7th Cir. 2016). But this motion does not ask the court to adjudicate the merits of any part of the FDCPA claim that would be applicable to class members. The rationale for the rule—that it is unfair to allow class members to benefit from a favorable judgment without subjecting them to the risk of an unfavorable one—does not apply in this case, as the issue on this motion is unique to Heisler. Potential future class members will neither benefit from a ruling in Heisler's favor or suffer the effects of an unfavorable one. Furthermore, even if class certification would be improper, this motion does not argue for class certification, so the rule is irrelevant.

To the extent Convergent argues that this motion is a re-litigation of Heisler's motion for class certification, I disagree. I denied Heisler's motion for class certification because Convergent had a unique, *arguable* defense. Summary judgment applies an entirely different

7

legal standard. I do not look to see whether the defense is arguable, but whether the evidence supporting it would convince any rational trier of fact, or in this case, whether the evidence would convince me to apply the discretionary doctrine of judicial estoppel.

In sum, I see no procedural impropriety in Heisler's motion for summary judgment and will proceed to the merits.

*2. Judicial Estoppel*

Judicial estoppel is an equitable doctrine, invoked to protect the integrity of the courts by preventing a party who prevails on one ground in a lawsuit from repudiating that ground in a subsequent lawsuit. *See De Vito v. Chicago Park Dist.*, 270 F.3d 532, 535 (7th Cir. 2001). In the context of a bankruptcy, judicial estoppel is used to bar a debtor from pursuing a cause of action after the bankruptcy ends that he or she failed to disclose to the bankruptcy court during the course of the bankruptcy proceedings. *See Cannon-Stokes v. Potter*, 453 F.3d 446, 448 (7th Cir. 2006). In other words, a debtor in bankruptcy who denies owning an asset, including a chose in action or other legal claim, cannot realize on that concealed asset after the bankruptcy ends. *Id.* Although this doctrine is seemingly harsh, the theory behind it is that it "induces debtors to be truthful in their bankruptcy filings[, which] will assist creditors in the long run (though it will do them no good in the particular case)—and it will assist most debtors too, for the few debtors who scam their creditors drive up interest rates and injure the more numerous honest borrowers." *Id.*

Courts have repeatedly observed that judicial estoppel is a discretionary doctrine and there is no set formulation for deciding when to apply it. *New Hampshire v. Maine*, 532 U.S. 742, 751 ("In enumerating these factors, we do not establish inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel. Additional

considerations may inform the doctrine's application in specific factual contexts."); *accord Walton v. Bayer Corp.*, 643 F.3d 994, 1002 (7th Cir. 2011) ("For reasons we don't understand, the cases are coy about defining [judicial estoppel]."). Factors courts consider include (1) whether the plaintiff took an inconsistent position in earlier litigation, (2) whether the plaintiff prevailed on that claim, and (3) if the claim is not estopped, either the plaintiff will derive an unfair advantage or the defendant will suffer an unfair detriment. *Id.* The three factors are not a "test" for when judicial estoppel should apply; it remains a discretionary doctrine a court may apply as needed to protect interested parties and the integrity of the judicial system.

Convergent's amended answer to Heisler's complaint states as an affirmative defense that "Plaintiff filed a bankruptcy petition in which he apprised the Bankruptcy Court and his creditors that he had FDCPA actions worth a certain dollar amount. Plaintiff is judicially estopped from attempting to claim or recover any sums in excess of said amount." (Docket # 30 at 18.)

One important factor in determining whether to apply judicial estoppel is whether there is inconsistency between a party's representations in earlier litigation and its representations in the present action. *De Vito*, 270 F.3d at 535. Here, Heisler's original bankruptcy petition listed two FDCPA claims worth a total of $2,000. His amended bankruptcy schedule dropped one FDCPA claim and listed the other (presumably this one) as worth $1,000. In this case, Heisler's complaint requests statutory damages under 15 U.S.C. § 1692k(a)(2)(B), which allows damages up to $1,000. (Compl. ¶ 47(A)(2), Docket # 1.) These statements are entirely consistent with one another: Heisler valued his FDCPA claim at $1,000 in both actions. I see no unfairness in allowing Heisler to proceed on that

9

claim. Therefore, I will grant Heisler's motion for summary judgment on the judicial estoppel defense as to his $1,000 statutory damages claim.

As for the potential incentive award, although Heisler's original bankruptcy petition did not mention it, his amended schedule filed before the close of bankruptcy proceedings listed a class representative incentive award worth $6,000. In his complaint in this case, Heisler requests "[a]n incentive award for Plaintiff, in connection with his services to the Class, in an amount to be determined by the Court after judgment is entered in favor of the Class." (Compl. ¶ 47(A)(3), Docket # 1.) This statement is vague, but not inconsistent with Heisler's bankruptcy filings. He has never represented to this court that his incentive award should exceed $6,000. Because I perceive no inconsistency, I am not inclined to apply judicial estoppel to Heisler's request for an incentive award—at least not unless he requests more than $6,000.

Convergent points out that in *Spaine v. Cmty. Contacts, Inc.*, the Seventh Circuit stated that judicial estoppel might apply when the plaintiff made a late disclosure of an asset before the end of bankruptcy proceedings "if [the defendant] could prove that [the] omission, though later cured, was an intentional effort to conceal an asset from her creditors." 756 F.3d 542, 548 (7th Cir. 2014). Convergent offers six items from the record that it claims support an inference that Heisler intended to hide the potential incentive award. (Docket # 86 at 17–18.)

First, Convergent argues that Heisler was represented by counsel in his bankruptcy proceedings, making it "less likely" that the omission was a result of Heisler misunderstanding his obligations to disclose the claim. (*Id.* at 17.) But the fact that Heisler was represented by counsel tells us nothing of Heisler's subjective intent. A client

represented by counsel may nevertheless fail to fulfill a legal obligation for any number of innocent reasons—for example, due to a miscommunication between counsel and client, or between bankruptcy counsel and counsel in the other action, or due to counsel's failure to advise the client. *Metrou v. M.A. Mortenson Co.*, 781 F.3d 357, 360 (7th Cir. 2015) (some omissions "will be innocent[, for example] based on poor communication between bankruptcy counsel and tort counsel . . . and should not be punished"). It is not reasonable to infer that, simply because a party is represented by counsel, that party has full understanding of their legal obligations and therefore that any failure to fulfill an obligation must be intentional. Furthermore, we do not know how, or even if, Heisler's bankruptcy counsel advised him regarding disclosure of the potential incentive award, and attorneys (like the ones in this case) may disagree about whether it was an asset requiring disclosure at all. (Docket # 81 at 11 n. 2; Docket # 86 at 19–20; Reply Br. at 8, Docket # 90.) The mere fact that Heisler was represented by counsel therefore says nothing about Heisler's subjective intent.

Second, third, and fourth, Convergent highlights Heisler's repeated statements under oath that his bankruptcy schedules were accurate, and his failure to correct his attorney's statement that the FDCPA claims were "down to a solid number" and that number was $2,000. (Docket # 86 at 17–18.) I fail to follow Convergent's reasoning. Without evidence that Heisler was aware of the potential incentive award and understood his duty to disclose it, Heisler's statement under oath that he had reported all his assets does not imply dishonesty. If anything, the rational inference is that Heisler was unaware of the potential incentive award or of his obligation to disclose it, and that the omission was thus an innocent one.

Fifth, Convergent points out that Heisler did not amend his schedules to include his potential incentive award until four months after filing his putative class action complaint and sixty days after the trustee filed its report of no distribution. (*Id.* at 18.) Again, the mere passage of time is not evidence of intent to deceive. There are any number of innocent explanations for such a delay and it is not rational to infer intent to deceive without more. *See Matthews v. Potter*, 316 F. App'x 518, 522 (7th Cir. 2009) ("The Bankruptcy Code contemplates the possibility that a debtor may later discover and inform the trustee of additional assets not already listed on the schedules."); Fed. R. Bankr. P. 1009 (debtor may freely amend a "voluntary petition, list, schedule, or statement . . . as a matter of course at any time before the case is closed"). Even if Heisler had not amended his schedules *at all*, it would not be reasonable to infer that he intended to deceive. *Ryan Operations G.P. v. Santiam–Midwest Lumber Co.*, 81 F.3d 355, 364 (3d Cir. 1996) ("Policy considerations militate against adopting a rule that the requisite intent for judicial estoppel can be inferred from the mere fact of nondisclosure in a bankruptcy proceeding."). The fact that Heisler *did* amend the schedules suggests, rather, an intent to be truthful.

Finally, Convergent finds evidence of Heisler's deceptive intent in an email from counsel during settlement proceedings. The parties debate whether this email is properly disclosed under the Civil Local Rules or admissible under the Federal Rules of Evidence. I need not resolve this, because even if the statement is both allowed and admissible, it is not probative of Heisler's subjective intent. It is simply not reasonable to infer from one non-binding settlement communication by counsel in the FDCPA case that Heisler had the subjective intent to deceive in his earlier bankruptcy case.

In sum, none of these facts supports an inference that Heisler had the intent to hide assets in his bankruptcy proceedings. Nor does considering these facts together, rather than separately, tell us anything about Heisler's subjective intent: as the saying goes, zero plus zero still equals zero. Heisler might have erred in a technical sense by not disclosing the potential incentive award in his initial bankruptcy petition. However, Convergent has not met its burden of providing evidence sufficient for a rational trier of fact to conclude that Heisler engaged in intentional deceit.[1] Therefore, I will grant Heisler's motion for summary judgment on the judicial estoppel defense as to the class incentive award up to the amount of $6,000.

## CONCLUSION

To prevail on this motion, Heisler must show that there are no genuine issues of material fact and that he is entitled to judgment as a matter of law on the judicial estoppel defense. Because Heisler consistently asserted a $1,000 statutory damages claim in Bankruptcy Court and in this court, I will grant Heisler's motion for summary judgment on the judicial estoppel defense as to the statutory damages claim. Because there is insufficient evidence to support a finding that Heisler's initial omission of the potential incentive award in his bankruptcy petition was intentional, I will also grant Heisler's motion for summary judgment on the judicial estoppel defense as to his potential class representative incentive award, but only up to $6,000.

---

[1] It is worth noting that, even when there is intentional concealment of assets, judicial estoppel arguably should not apply when doing so would harm creditors by preventing the plaintiff from recovering funds in which creditors might ultimately share. *See Thompson v. Elkhart Lake's Road America, Inc.*, No. 15-CV-672-JPS, 2016 WL 1558414, at *6 (E.D. Wis., Apr. 15, 2016). This argument does not apply here, as creditors apparently would not benefit from Heisler's incentive award (Docket # 81 at 14) and I have other reasons detailed herein for declining to apply judicial estoppel.

**ORDER**

**NOW, THEREFORE, IT IS ORDERED** that Heisler's motion for summary judgment on the judicial estoppel defense (Docket # 80) is **GRANTED IN PART** and **DENIED IN PART**. Heisler is not judicially estopped from pursuing statutory damages up to $1,000 or a class representative incentive award up to $6,000.

Dated at Milwaukee, Wisconsin this 12th day of June, 2019.

BY THE COURT:

*s/Nancy Joseph*
NANCY JOSEPH
United States Magistrate Judge