CHAD H. HEISLER, on behalf of himself and all
others similarly situated,

    **Plaintiff,**

    v.                  **Case No. 16-CV-1344**

CONVERGENT HEALTHCARE RECOVERIES,
INC., and JOHN AND JANE DOES NUMBERS 1
THROUGH 25.

    **Defendants.**

## DECISION AND ORDER ON
## PLAINTIFF'S RENEWED MOTION TO CERTIFY CLASS,
## DEFENDANT'S MOTION TO STRIKE CLASS ALLEGATIONS, AND
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

    Chad H. Heisler brought this class action complaint against Convergent Healthcare Recoveries, Inc. ("Convergent"), alleging that Convergent sent a debt collection letter that violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA"). (Docket # 1.) Before me now are three motions: Convergent's motion for summary judgment (Docket # 99), Heisler's renewed motion for class certification (see Docket # 98), and Convergent's motion to dismiss Heisler's putative class allegations as time-barred (Docket # 116). For the reasons below, Convergent's motion for summary judgment will be granted and the other motions denied as moot.

## PROCEDURAL BACKGROUND

    On October 6, 2016, Heisler filed a complaint on behalf of himself and similarly situated individuals alleging that Convergent sent letters that violated the FDCPA. (Docket

# 1.) On September 27, 2018, I denied class certification on the basis that Heisler was an inadequate class representative because his own claim was potentially subject to the unique defense of judicial estoppel (Docket # 68) and denied his motion for reconsideration on December 4, 2018 (Docket # 69). Heisler subsequently filed for summary judgment as to the judicial estoppel defense, which I granted in relevant part on June 12, 2019, finding that Heisler was not judicially estopped from pursuing his claim. (Docket # 94.)

At a hearing on June 20, 2019, the court and counsel discussed a briefing schedule on a renewed motion for class certification in light of my decision on judicial estoppel. (Docket # 96.) In a scheduling order dated June 25, 2019, I noted that Heisler wished to renew his class certification motion and directed the parties to file simultaneous, limited updates to their briefing on the original motion for class certification (Docket # 98), which they did on July 15, 2019 (Docket # 102, Docket # 103). Also on July 15, 2019, Convergent filed a motion for summary judgment. (Docket # 99.) Heisler filed his amended response on September 17, 2019 (Docket # 114), and Convergent filed its reply on October 9, 2019 (Docket # 118). Before the summary judgment motion was fully briefed, on October 4, 2019, Convergent filed a motion to strike Heisler's putative class allegations with prejudice on the basis that all class claims were now time-barred. (Docket # 116.) Heisler responded on November 1, 2019 (Docket # 120) and Convergent replied on November 15, 2019 (Docket # 121). All three motions are now fully briefed and ready for resolution.

## BACKGROUND FACTS

Heisler asserts that in 2015, he received medical treatment from a healthcare provider called Wheaton Franciscan Healthcare – Southeast Wisconsin, Inc. ("Wheaton") at a facility called "Wheaton Franciscan Healthcare: Elmbrook Memorial Campus." (Pl.'s Resp.

to Def.'s Statement of Facts ("Pl.'s Resp.") ¶ 2, Docket # 112.) Wheaton had a debt collection agreement with Convergent. (Pl.'s Resp. ¶ 12.)

In July 2016, Convergent sent Heisler a collection letter. (Def.'s Proposed Findings of Fact ("DPFOF") ¶ 1, Docket # 100 (citing Compl. Ex. A, Docket # 1 at 12–13).) The upper right-hand corner of the letter contained Convergent's logo, name, address, and business hours. (Compl. Ex. A, Docket # 1 at 12.) Underneath were four line items: "Date: 04/11/16," "Total Due: $250.00," "Agency Account#: [redacted]," and the line item at issue in this case, "Re: WF, Inc – Elmbrook Mem". (*Id.*) The letter began, "This account has been placed with us for collection!"



(*Id.*) After providing validation information and instructions for contacting the office or making payments, the letter concluded, "This is an attempt to collect a debt . . . . This communication is from a debt collector." (*Id.*) Convergent mailed the letter to Heisler at a

residence in New Berlin, Wisconsin, where his name was on the lease and he stayed on weekends. (DPFOF ¶¶ 4–5.)

In his deposition, Heisler initially testified that he received the envelope containing the letter from Convergent, but did not open it. (DPFOF ¶ 6 (citing Dep. of Chad H. Heisler ("Heisler Dep.") at 35:1–19, Decl. of Chirag H. Patel ("Patel Decl.") Ex. A, Docket # 101-1.) He stated that he put it in a folder, which went to his attorney, Mr. Pedersen. (Heisler Dep. at 35:11–16.) Later in his deposition, Heisler stated that he did open the letter, and was mistaken earlier when he said he did not. (*Id.* at 82:4–11.) Heisler explained that "going over it and seeing the letter" had refreshed his recollection. (*Id.* at 83:9–21.) Heisler stated that he did open it, saw "Convergent," saw a number and amount, and set the letter aside to give his attorney. (*Id.* at 84:22–24.) When asked how far he read before he stopped and put it aside for his bankruptcy attorney, Heisler answered, "'This account has been placed with us for collection'"—the first line of the letter. (*Id.* at 88:16–20.) Heisler specifically confirmed that he read the top right of the letter. (*Id.* 88:21–22.) Heisler testified that he understood Convergent to be attempting to collect a debt but did not know for whom. (*Id.* at 89:2–4.)

Heisler asserted that his then-fiancée (now wife), Donna, was present when he opened the letter. (Heisler Dep. at 85:11–14.) Donna confirmed that she was present when Heisler opened and read the letter. (Decl. of Donna Mantanona Heisler ("Donna Heisler Decl.") ¶ 7, Decl. of Andrew T. Thomasson ("Thomasson Decl.") Ex. K, Docket # 109-11.) Donna stated that the letter "looked like a scam to me. There is nothing on that letter that helped me understand [Convergent] was collecting a medical debt or who hired [Convergent]." (*Id.* ¶ 14.)

4

At the time Convergent sent the letter to Heisler, it used computer software called Flexible Automated Collection System ("FACS") to manage its accounts and generate correspondence. (DPFOF ¶ 18.) The name of the creditor in the letter sent to Heisler was automatically populated from the FACS system. (DPFOF ¶ 23, Pl.'s Resp. ¶ 23.) At the time Convergent sent the letter to Heisler, the field on the letter that was intended to identify the creditor was populated from a field in the FACS system that had a 22-character limit. (Pl.'s Resp. ¶ 19.)

Convergent asserts that Wheaton directed Convergent to identify it as "WF, Inc. - Elmbrook Memorial" on letters to consumers who had incurred the debt at Wheaton's "Elmbrook Memorial" location. (DPFOF ¶ 15 (citing Dep. of Mary Krueger ("Krueger Dep.") at 79:18-83:5; 93:6-94:1, Thomasson Decl. Ex. F, Docket # 109-6).) Convergent's Director of Operations and designated Rule 30(b)(6) witness, Mary Krueger, testified that Convergent used an abbreviated name for Wheaton in its FACS system due to space limitations. (Krueger Dep. at 79:24–80:20, 88:4–16, 95:14–96:7, 132:23–133:4, 136:21–25.) Krueger testified that she was aware of space limitations in the system and relied on client input regarding how to abbreviate client names. (Krueger Dep. at 79:24–80:20.) Executive Vice President Janet Draher testified that standard procedure would have been to seek approval of the abbreviation from the client, and that Convergent used an abbreviated name for Wheaton with the client's approval due to space limitations in the system. (Dep. of Janet Draher ("Draher Dep.") at 14:8–20, Thomasson Decl. Ex. G, Docket # 109-7.) Draher also testified that she had been unaware of the technological limitations in the FACS system until legal counsel asked her to investigate and add more characters to the creditor name field. (*Id.* at 30:22–31:6.)

Heisler asserts that "WF, Inc. - Elmbrook Mem" is not the creditor's name, the facility name, or the name the client directed Convergent to use. (Pl.'s Resp. ¶ 16.) Heisler contends that it is not a name a Wisconsin resident would associate as being affiliated with Wheaton Franciscan Healthcare: Elmbrook Memorial Campus or any other hospital or other medical facility. (*Id.*) He asserts that the names most commonly used by patients and Wisconsin residents when referring to that facility are "Elmbrook Memorial Campus," "Elmbrook Campus," or "Elmbrook Memorial Hospital." (*Id.*)

At the direction of legal counsel, Convergent later adapted its process for generating correspondence to allow more characters, so that letters regarding this creditor would include "WF, Inc. - Elmbrook Memorial" rather than "WF, Inc. - Elmbrook Mem". (DPFOF ¶ 28; Draher Dep. at 25:23–26:1; Krueger Dep. at 133:4–6, 136:25–137:2.) Convergent also altered its template letter, replacing "This account has been placed with us for collection!" with "The above referenced creditor has placed this account with our office for collection" and included the word "creditor" and the name of the creditor in the pay stub. (Draher Dep. at 24:16–25:20.)

## SUMMARY JUDGMENT STANDARD

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. The mere existence of some factual dispute does not defeat a summary

judgment motion. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, the court must draw all inferences in a light most favorable to the nonmovant. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment, a party cannot rely on his pleadings and "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Services, Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

I must also view the evidence presented through the prism of the substantive evidentiary burden. *Anderson*, 477 U.S. at 254. Where the party moving for summary judgment also bears the burden of persuasion at trial—for example, because the movant is the plaintiff or asserting an affirmative defense—the movant must establish each and every essential element of his claim or defense. *See McKinney v. Am. River Transp. Co.*, 954 F. Supp. 2d 799, 803 (S.D. Ill. 2013) (citing *Celotex*, 477 U.S. at 32); *see also Lewis v. Kordus*, No. 09-CV-138, 2010 WL 3700020, at *1 (E.D. Wis. Sept. 14, 2010) ("[W]here the moving party bears the burden of proof at trial, he can prevail only by proving every element of his case with evidence so compelling that no reasonable jury could return a verdict for the non-

moving party."). This differs from the usual summary judgment motion filed by a defendant, who can prevail just by showing an absence of evidence to support any essential element of the plaintiff's case. *See Modrowski v. Pigatto*, 712 F.3d 1166, 1169 (7th Cir. 2013).

## ANALYSIS

Convergent argues that it is entitled to summary judgment because Heisler lacks standing to sue. (Docket # 99 at 9–13.) Alternatively, Convergent argues that it should prevail on the merits because its letter identified the creditor under 15 U.S.C. § 1692g(a)(2) and was not "false, deceptive, or misleading" under 15 U.S.C. §§ 1692e and 1692e(10). (*Id.* at 13–20.) Convergent further maintains that any violation was the result of a *bona fide* error under 15 U.S.C. § 1692k(c). (*Id.* at 20–23.)

*1. Standing*

Convergent argues that Heisler lacks standing under the recent Seventh Circuit case of *Casillas v. Madison Avenue Assoc., Inc.*, 926 F.3d 329 (7th Cir. 2019). (Docket # 99 at 9–13.) Convergent asks that I revisit my pre-*Casillas* determination that Heisler had standing, in light of this new controlling case. (*Id.*)

In *Casillas*, the debt collector sent a letter that failed to include the statutorily required notice that a debtor wishing to dispute the debt had to communicate in writing. *Id.* at 332. However, Casillas "did not allege that she tried—or even planned to try—to dispute the debt . . . ." *Id.* The court found that Casillas did not have standing, explaining that "Casillas had no more use for the notice than she would have had for directions accompanying a product that she had no plans to assemble." *Id.* at 334 (internal citation and quotation marks omitted). The court concluded that this allegation of a "bare procedural violation" could not

8

satisfy the injury-in-fact requirement for standing. *Id.* at 339 (citing *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016)).

Convergent argues that this case is analogous to *Casillas* because Heisler has not produced any evidence that he suffered any harm, or risk of harm, as a result of the alleged deficiency in the letter. (Docket # 99 at 11.) Convergent points out that Heisler took no action on the letter himself but gave the letter to his attorney, and there is no evidence that anything about the letter caused him to take any action inconsistent with his rights under the FDCPA or that he would have taken some alternative course of action if the letter had identified the creditor in a different format.[1] (*Id.* at 12–13.) Convergent points to a post-*Casillas* case, *Lavallee v. Med-1 Solutions, LLC*, 932 F.3d 1049 (7th Cir. 2019) (Docket # 118 at 4–5), in which the Seventh Circuit emphasized that in most cases, "[a] bare allegation that the defendant violated one of the Act's procedural requirements typically won't satisfy the injury-in-fact requirement" and stated that FDCPA plaintiffs should allege a concrete injury in their complaints. *Id.* at 1053; *see also Casillas*, 926 F.3d at 338 n.7 (disagreeing with *Church v. Accretive Health, Inc.*, 654 F. App'x 990, 994 (11th Cir. 2016) that a bare procedural violation of a disclosure requirement is a "concrete injury" sufficient to establish standing).

Heisler responds that this case is distinguishable from *Casillas* in that Heisler is not alleging deprivation of notice of statutory rights, but deprivation of substantive information. (Docket # 114 at 12.) Heisler argues that *Casillas* stands only for the proposition that lack of notice of statutory rights, without more, cannot give rise to a concrete injury. (*Id.*) Here, Heisler is not alleging lack of notice of statutory rights, but lack of substantive information:

---

[1] Convergent points out that Heisler originally testified that he did not even open the letter, but later testified that he did open it and read the top portion. (Docket # 99 at 12.) Because this is Convergent's summary judgment motion, I must construe the facts in the light most favorable to Heisler and assume that Heisler did open the letter and read the first part. (*Id.*)

the name of the creditor. Heisler argues that mere deprivation of this information itself gives rise to concrete injury.

Both parties are correct, to a point. Heisler is correct that *Casillas* is not analogous to this case. The court in *Casillas* clearly contrasted the failure to provide information about a debtor's statutory rights, which worked no harm unless the debtor might actually have exercised those rights, with failure to provide substantive information. 926 F.3d at 334–35. In the latter case, the informational injury itself could be concrete because the debtor was deprived of the opportunity to review and respond to the substantive information. *Id.* (citing *Robertson v. Allied Solutions, Inc.*, 902 F.3d 690, 697 (7th Cir. 2018)). In *Casillas*, the requirement to give notice that disputes must be communicated in writing was meant to protect a debtor's interest in effectively disputing a debt, such that Casillas had no standing without alleging that she had such an interest. Here, the provisions of the FDCPA allegedly violated are meant to protect a debtor's interests in receiving and responding to accurate substantive information. Heisler undeniably had an interest in the information identifying the creditor. He needed to be able to recognize the name of the creditor to know whether the letter was a legitimate attempt to collect a debt, and therefore whether to pay it, and to whom. The deprivation of this information can itself inflict a concrete injury; Heisler does not need to allege that he would have taken any different action had the alleged violation not occurred.

Convergent is also correct, however, that even where the alleged injury is a deprivation of substantive information, the plaintiff must affirmatively allege an actual injury. If I were evaluating standing on the basis of the complaint alone, Convergent's arguments might be persuasive. But at this stage, Heisler has not only alleged but provided

evidence of a concrete injury-in-fact. Heisler testified that he opened the letter and read parts of it before he set it aside for his attorney. (Heisler Dep. at 84:21–24.) He testified that the letter left him unsure as to whom to pay; he understood that Convergent was collecting a debt, but he did not understand for whom.[2] (Pl.'s Resp. ¶ 17 (citing Heisler Dep. at 34:20–25); Heisler Dep. at 89:2–4.) This is precisely the sort of harm the statute was designed to avoid. I conclude, again, that Heisler has standing to sue.

### 2. *§ 1692g(a)(2)*

In his complaint, Heisler alleges that Convergent's letter failed to identify the creditor, in violation of § 1692g(a)(2). (Docket # 1 ¶ 46(c).) Heisler argues that the letter neither clarified which entity was the creditor nor used the actual name of the creditor. (Docket # 114 at 12–20.)

Section 1692g(a)(2) of the FDCPA requires that a debt collector's first correspondence with a consumer contain "the name of the creditor to whom the debt is owed." The Seventh Circuit specifies that the letter must state the name of the creditor "in a manner clear enough for an unsophisticated consumer to understand." *Smith v. Simm Assoc., Inc.*, 926 F.3d 377, 380 (7th Cir. 2019) (citing *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 321 (7th Cir. 2016) (quoting *Chuway v. Nat'l Action Fin. Serv., Inc.*, 362 F.3d 944, 948 (7th Cir. 2004)). The unsophisticated consumer, while "uninformed, naïve, or trusting," possesses at least "reasonable intelligence, and is capable of making basic logical deductions and inferences." *Pettit v. Retrieval Masters Creditor Bureau, Inc.*, 211 F.3d 1057, 1060 (7th Cir. 2000) (citations and internal quotation marks omitted).

---

[2] Heisler's fiancée stated that the letter "looked like a scam to me. There is nothing on that letter that helped me understand [Convergent] was collecting a medical debt or who hired [Convergent]." (Donna Heisler Decl. ¶ 14.)

Convergent asserts that its letter did identify the creditor. (Docket # 99 at 13–19.) Convergent points to features of its letter it believes clarify that the party following "Re:" is the creditor, and also asserts that a creditor may use "a trade name or other non-commercial name that the consumer is likely to recognize." (*Id.* at 6, 13–18.) Convergent also argues that Heisler has failed to produce any evidence of consumer confusion as it argues is required under *Ruth v. Triumph P'ships*, 577 F.3d 790, 800 (7th Cir. 2009). (*Id.* at 19.)

Heisler argues that the letter does not clarify that the entity following "Re:" is the creditor as opposed to something else, such as the location of services. (Docket # 114 at 16–20 (citing *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317 (7th Cir. 2016); *Sparkman v. Zwicker & Assocs., P.C.*, 374 F. Supp. 2d 293, 300–01 (E.D.N.Y. 2005).) Heisler also argues that "WF, Inc. - Elmbrook Mem" is not the name of the creditor, and there is no evidence that an unsophisticated consumer in July 2016 would have understood it to refer to Wheaton. (Docket # 114 at 4, 13–15.) Furthermore, Heisler argues that *Ruth* is inapposite because it concerned a different provision of the FDCPA, § 1692e, so extrinsic evidence of consumer confusion is not required. (*Id.* at 20.)

### 2.1    Extrinsic Evidence

I am unconvinced by Convergent's argument that Heisler's § 1692g(a)(2) claim necessarily fails because he has not produced extrinsic evidence of consumer confusion. (Docket # 99 at 17, 19 (citing *Ruth*, 577 F.3d 790 at 800); Docket # 118 at 7.) In *Ruth*, the Seventh Circuit laid out the familiar three categories of statements alleged to be deceptive or misleading under the FDCPA: (1) those that are plainly not confusing, where summary judgment should be granted for the defendant; (2) those that are not plainly misleading or deceptive but might possibly mislead or deceive the unsophisticated consumer, where

extrinsic evidence (preferably consumer surveys) is required to show that a significant percentage is likely to be deceived; and (3) those that are clearly misleading on their face, where summary judgment is granted to the plaintiff without any extrinsic evidence needed "to prove what is already clear." *Id.* at 800–01.

Although the *Ruth* court was looking at § 1692e, not § 1692g(a), Convergent is correct that functionally, the analysis of a § 1692g(a) claim is often similar to or the same as a *Ruth* analysis. *See Janetos*, 825 F.3d at 322–23 (applying the three-category framework to § 1692g(a)(2) claim); *Duarte v. Client Serv., Inc.*, No. 18 C 1227, 2019 WL 4572941, at *4 (N.D. Ill. Sept. 20, 2019) (citing *Wood v. Allied Interstate, LLC*, No. 17 C 4921, 2018 WL 6830333, at *4 (N.D. Ill. Dec. 28, 2018); *Lemke v. Escallate, LLC*, 374 F. Supp. 3d 727, 733 (N.D. Ill. Mar. 19, 2019)). As relevant here, under both provisions, a plaintiff can survive summary judgment without extrinsic evidence if the challenged statement violates the statute on its face. *Ruth*, 577 F.3d at 801; *Janetos*, 825 F.3d at 323. But unlike § 1692e, § 1692g(a) does not require a showing of consumer confusion to show a facial violation, so no extrinsic evidence is required. The Seventh Circuit has been clear about this: "[Extrinsic] evidence [of consumer confusion] is not necessary . . . where § 1692g(a)(2) requires a particular disclosure—the name of the current creditor—and defendants' letters simply fail to provide it, directly or indirectly." *Janetos*, 825 F.3d at 323.

To understand when extrinsic evidence is required to survive summary judgment on a § 1692g(a)(2) claim, take an extreme example: imagine that this letter had no "Re:" line at all, or left it blank, or listed the name of an entirely different creditor. Certainly a fact-finder would not need surveys proving consumer confusion to conclude that the letter had not

named the creditor. Not only would the claim survive summary judgment, but the plaintiff would be entitled to summary judgment in her favor, without any extrinsic evidence.

Heisler's assertion that the letter failed to provide the name of the creditor needs no extrinsic evidence. All Heisler needs to succeed on that claim is to show that the name of the creditor was not on the letter; Heisler need not show that anyone would be confused by what was there in its place. Thus, Heisler's failure to produce extrinsic evidence does not justify summary judgment in Convergent's favor on Heisler's § 1692g(a)(2) claim.

### 2.2. Identifying the Creditor

Convergent's argument that its letter identified the creditor relies on the letter's similarity to others that have been found to accurately identify the creditor. (Docket # 99 at 6, 14–17 (citing *Smith*, 926 F.3d 377; *Steffek v. Client Serv.*, No. 18-C-160, 2019 U.S. Dist. LEXIS 39388 (E.D. Wis. Mar. 12, 2019), *rev'd*, 948 F.3d 761 (7th Cir. 2020); *Encarnacion v. Fin. Corp. of Amer.*, 2:17-cv-566-FtM-38UAM, 2019 U.S. Dist. LEXIS 30204 (M.D. Fla. Feb. 26, 2019); *Howard v. Client Serv.*, No. 0:17-cv-62425-UU, 2018 U.S. Dist. LEXIS 142827, at *16–17 (S.D. Fla. Aug. 20, 2018); *Walker v. Lamb*, No. 4:18-cv-04094, 2019 U.S. Dist. LEXIS 21301, at *23–24 (W.D. Ark. Feb. 11, 2019); *Thoby v. Century Fin. Serv.*, No. 3:18-cv-01404 (SRU), 2019 U.S. Dist. LEXIS 58630, at *4 (D. Conn. Apr. 4, 2019).)

The Seventh Circuit decision reversing *Steffek* scuttles Convergent's argument. In *Steffek*, the letter was materially identical to the letter in this case. It read:

> RE: CHASE BANK USA, N.A.
> ACCOUNT NUMBER: XXXXXXXXXXXX3802
> BALANCE DUE: $8,936.43
> REFERENCE NUMBER: [redacted]3872

The body of the letter stated that "[t]he above account has been placed with our organization for collections," notified the recipient of her validation rights including that the office would provide her with "the name and address of the original creditor, if different from the current creditor," specified that payment should be made to Client Services and gave its address, and stated finally, "THIS COMMUNICATION IS FROM A DEBT COLLECTOR. THIS IS AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE."

The Seventh Circuit found that this form letter did not satisfy the requirement to identify the creditor:

> [T]he problem for Client Services is that the form letter simply did not identify Chase Bank as the creditor to whom the debts were then owed. The heading said "RE: CHASE BANK," followed by an account number, which communicated only that the letter somehow related to the listed Chase Bank account. The body of the letter then explained that this "account has been placed with our organization for collections," referring to Client Services. Farther down, the letter said that the recipient could write to Client Services to find out if the original creditor was different from the current creditor. This latter sentence raised the possibility that the debt could have been resold, but the letter did not clarify who actually owned the debt. The letter did not communicate clearly on whose behalf Client Services was trying to collect the debt. The letter did say, however, that the recipient should pay Client Services rather than anyone else, which a recipient could reasonably understand as implying that Client Services itself was then the creditor.

The court rejected the defendant's argument that identifying itself as a debt collector, explaining that the account had been placed with it for collections, and including an account number were sufficient to identify the creditor. The court reiterated its holding in *Janetos* that a letter that requires the recipient to engage in this type of "guesswork" does not satisfy the requirement to communicate the information to the unsophisticated consumer.

Similarly to the "Re:" line in *Steffek*, the line "Re: WF, Inc. - Elmbrook Mem" communicated only that the letter somehow related to "WF, Inc. - Elmbrook Mem," not that that entity was the creditor. As in *Steffek*, the statement that the account had been placed with Convergent for collections only identified the debt collector, not the creditor. The notice that the recipient could write to Convergent to find out if the original creditor was different from the current creditor did little more than notify the recipient that there was a creditor; it did not say who that creditor was.

If anything, the letter Convergent sent to Heisler is even *less* clear about the identity of the creditor than the letter in *Steffek*. In *Steffek*, the letter included a Chase Bank account number that might have helped the consumer to "identify the origins of the debt in question," even if it did not say who owned it. Here, the recipient would get no such help, as the account number listed is not a Wheaton Franciscan account number, but a Convergent account number. (Thomasson Decl. Ex. D at 2, Docket # 109-4; Krueger Dep. at 61:17–19.) Furthermore, the listed name of the creditor in *Steffek* was the actual name of the creditor. It was also a type of entity—a bank—that was easily recognizable as a potential creditor. While giving the actual name of the creditor and/or suggesting that the entity is a type likely to be a creditor would not be enough to identify the creditor under *Steffek*, easy recognition of the creditor's name, or at least that the entity is a type likely to be a creditor, might at least have helped the unsophisticated consumer guess that the entity was the creditor. Here, "WF, Inc. - Elmbrook Mem" is not the legal or commercial name of the creditor and there is no evidence that consumers ever would have encountered this abbreviation before, nor is it obviously a type of entity likely to be a creditor. Thus, there is

even less reason than there was in *Steffek* to believe that an unsophisticated consumer would understand that the entity was the creditor.

Because it is not clear on the face of this letter that an unsophisticated consumer could readily identify that the entity following "Re:" was the creditor, Convergent is not entitled to summary judgment on its § 1692g(a)(2) claim.

### 2.3    Naming the Creditor

Even if *Steffek* were not dispositive of this issue and Convergent could prove that the unsophisticated consumer would understand that the entity after "Re:" was the creditor, Convergent would still not be entitled to summary judgment because "WF, Inc. - Elmbrook Mem" is not the name of the creditor. Heisler asserts that the name of the creditor at the time the letter was sent was "Ascension Wisconsin" (Pl.'s Resp. ¶ 11), and for purposes of this motion I construe facts in Heisler's favor. Even Convergent does not claim that the name of the creditor was "WF Inc. - Elmbrook Mem"; Convergent states that the name of the creditor was "Wheaton Franciscan Healthcare – Southeast Wisconsin, Inc.," (DPFOF ¶ 14), but that name is not on the letter, either.

To be sure, "'[t]here may be multiple names for a creditor which an unsophisticated consumer could still perceive as being the correct name of the creditor.'" *Luzinski v. Arrow Fin. Serv., LLC*, No. 05-CV-1322, 2007 WL 2819556, at *2 (E.D. Wis. Sept. 26, 2007) (quoting *Blarek v. Encore Receivable Mgmt, Inc.*, 2007 WL 984096, at *16 (E.D. Wis. Mar. 27, 2007)); *see also Smith*, 926 F.3d at 380 (quoting *Leonard v. Zwicker & Assocs., P.C.*, 713 F. App'x 879, 883 (11th Cir. 2017) ("[N]o bright-light rule requires a debt collector to always identify the creditor by its full business name . . . . [A] debt collector may use the creditor's full business name, the name under which the creditor usually transacts business, or a

commonly used acronym." (internal quotation marks omitted)). But there is no evidence that "WF, Inc. - Elmbrook Mem," or any part thereof, was the commercial name or a commonly used acronym for this creditor. On the contrary, Convergent's own evidence suggests that the abbreviation "WF, Inc. - Elmbrook Memorial" was tailor-made for collections purposes because (1) the full name of the creditor would not fit in the system and (2) the client wanted to specify not just the name of the creditor but the location where the debtor received services. (Krueger Dep. at 79:24–80:20, 83:10–18, 93:15–94:18, 95:14–23, 107:23–108:12.) Then this abbreviation was further truncated when the information was extracted for mailing from a field in FACS that had a 22-character limit. (Krueger Dep. at 95:14–23, 96:5–7, 137:13–15.)

Convergent is untroubled by the fact that it used an invented name no consumer would have encountered before, because it believes consumers would have understood it anyway. There are two problems with this: (1) that is not the standard for a § 1692g(a)(2) claim, and (2) Convergent lacks evidence that consumers would have understood this abbreviation. First, Convergent misunderstands the requirements of § 1692g(a)(2). Convergent asserts that, under *Smith*, it need not use the legal name of the creditor, a common name of the creditor, or even an existing name at all; it must only identify the creditor in a manner "'clear enough that the recipient is likely to understand it.'" (Docket # 118 at 8 (citing *Smith*, 926 F.3d at 380 (quoting *Janetos*, 825 F.3d at 317) (citations omitted).) Convergent argues that because a consumer could figure out the creditor's identity from the abbreviation, Convergent satisfied its obligation under § 1692g(a)(2).

Convergent's argument boils down to materiality: it believes it should not be liable under § 1692g(a)(2) because consumers would have understood what "WF Inc. - Elmbrook

Mem" meant, *despite the fact* that it was not, in fact, the creditor's name. But there is no materiality requirement for § 1692g(a)(2), which requires a specific disclosure and penalizes the failure to provide it regardless of materiality. *See Janetos*, 825 F.3d at 324 ("[W]e decline to offer debt collectors a free pass to violate that provision on the theory that the disclosure Congress required is not important enough"). Convergent misunderstands *Smith* and the precedent it relied on, which concerned whether debt collectors had conveyed to the consumer which entity listed on their letter was the creditor. Those cases pointed out that there is no statutorily mandated language for doing so, as long as it is clear enough to the recipient which entity is the creditor. By contrast, there *is* statutorily mandated language for identifying *who that creditor is*: its "name." I do not have to say precisely what the definition of "name" is to say that the definition Convergent offers—anything that the recipient could decipher with sufficient mental effort—cannot be what Congress intended.

Second, there is little evidence that consumers were, in fact, likely to understand from this abbreviation who the creditor was. Convergent offers one page of results from a Google search for "wf inc – elmbrook mem" and an image of a webpage for "Wheaton Franciscan Elmbrook," both from July 14, 2019. (Patel Decl. Ex. D and E, Docket # 101-4 and 101-5.) Construing these documents in the light most favorable to Heisler, they do not support that the abbreviation was intelligible to consumers. They are not contemporaneous with the letter to Heisler, do not contain the abbreviation used in the letter, and arguably show only that Google could decipher the abbreviation, not that an unsophisticated consumer could. Convergent also points out that the client told it that its patients would "easily understand" the abbreviation "WF Inc." (Docket # 99 at 18 (citing DPFOF ¶¶ 15–17)), but this is evidence only that Convergent thought consumers could decipher its code; it

is not evidence that consumers actually could or would do so. Furthermore, Convergent argues at length that consumers would recognize "Elmbrook Memorial" (Docket # 99 at 17–19, Docket # 118 at 10), but the name on the letter is not "Elmbrook Memorial" but "WF Inc. - Elmbrook Mem". And even if the unsophisticated consumer could make the leap to "Elmbrook Memorial," it is unclear how they would have understood from "Elmbrook Memorial" that the creditor was "Ascension Wisconsin" or "Wheaton Franciscan Healthcare – Southeast Wisconsin, Inc."

Convergent is left with its argument that consumers would be able to identify the creditor using "basic logical deductions and inferences," such as that "Mem" is short for "Memorial" and "Memorial" is commonly used in hospital names. (Docket # 118 at 10–11.) But judges and lawyers familiar with medical debt collections and with the name of this particular creditor are not well-equipped to say that these are basic inferences for the unsophisticated consumer.

In sum, Convergent has not shown that its letter stated the name of the creditor as required by § 1692g(a)(2). Even if *Steffek* had not resolved this issue in Heisler's favor, Convergent would not be entitled to summary judgment on this claim.

*3. § 1692e and § 1692e(10)*

Convergent argues that Heisler has failed to produce facts supporting his claim that Convergent made a false, deceptive, or misleading representation in its correspondence in violation of § 1692e. (Docket # 99 at 19.) Heisler asserts that extrinsic evidence is not required because the letter is plainly deceptive or misleading on its face. (Docket # 114 at 20.)

Under § 1692e of the FDCPA, "a debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." Section 1692e(10) prohibits "any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." For purposes of § 1692e, a statement is "false" if it would confuse the unsophisticated consumer. *Wahl v. Midland Credit Mgmt.*, 556 F.3d 643, 646 (7th Cir. 2009). Section 1692e contains a materiality requirement; a statement that is technically false but not misleading to the unsophisticated consumer does not violate § 1692e. *Wahl*, 556 F.3d at 645–46. "[T]he inquiry under §§ 1692e, 1692g and 1692f is basically the same: it requires a fact-bound determination of how an unsophisticated consumer would perceive the letter." *McMillan v. Collection Prof'ls, Inc.*, 455 F.3d 754, 759 (7th Cir. 2006). The question of whether an unsophisticated consumer would find debt collection language misleading is a question of fact. *Lox v. DCA, Ltd.*, 689 F.3d 818, 822 (7th Cir. 2012) (citing *Walker v. Nat'l Recovery, Inc.*, 200 F.3d 500, 503 (7th Cir.1999)).

Extrinsic evidence of consumer confusion is required to succeed on a § 1692e claim when the language does not plainly violate the statute on its face. *Ruth*, 577 F.3d at 801. Even if "WF, Inc. - Elmbrook Mem" is not the actual name of the creditor and therefore technically false, it does not violate § 1692e unless it would also confuse or mislead the unsophisticated consumer, and this abbreviation could in fact be entirely clear to the relevant consumer population. *See Wahl*, 556 F.3d at 645–46 (7th Cir. 2009). And while the manner in which the letter identifies which entity is the creditor is not plainly clear, it is also not plainly false, misleading, or deceptive; the unsophisticated consumer reading this letter might accurately identify the creditor despite the ambiguity. Thus, the letter falls in the

second *Ruth* category, and Heisler must present extrinsic evidence of consumer confusion to prevail on this claim.[3] Because Heisler has not presented extrinsic evidence, Convergent is entitled to summary judgment on Heisler's claims under §§ 1692e and 1692e(10).

### 4. Bona Fide Error

The stated purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692. However, a debt collector may not be held liable for any FDCPA violation shown by a preponderance of the evidence to have (1) been unintentional, (2) resulted from a *bona fide* error, and (3) occurred despite the debt collector's maintenance of procedures reasonably adapted to avoid such error. 15 U.S.C. § 1692k(c); *see also Ruth*, 577 at 803; *Kort v. Diversified Collection Serv.*, 394 F.3d 530, 538 (7th Cir. 2005) (citing Black's Law Dictionary 168 (7th ed. 1999) (a bona fide error is one that is "made in good faith; a genuine mistake, as opposed to a contrived mistake.")). Determining whether procedures are reasonably adapted to avoid errors "is a uniquely fact-bound inquiry susceptible of few broad, generally applicable rules of law." *Leeb v. Nationwide Credit Corp.*, 806 F.3d 895, 900 n.3 (7th Cir. 2015) (internal quotations and citation omitted).

Convergent argues that any FDCPA violation was the result of a *bona fide* error. (Docket # 99 at 20–22.) Convergent points to procedures including reliance on client input for identifying the client in letters, use of computerized processes that pull account-specific information for mailings from the FACS software, and use of annually reviewed and attorney-approved template letters.[4] (*Id.*) Heisler does not dispute that the alleged error was

---

[3] Although a case in this district held that extrinsic evidence was not required on a similar claim in *Blarek v. Encore Receivable Mgmt, Inc.*, 2007 WL 984096, at *16 (E.D. Wis. Mar. 27, 2007), that case was pre-*Ruth* and its progeny. Therefore, I do not consider *Blarek* persuasive on this point.

[4] Convergent also argues that it uses a "scrub process" to confirm accuracy of account information and correct any identified errors. (Docket # 99 at 22.) This appears irrelevant, as the evidence indicates that this process

unintentional and resulted from a *bona fide* error. (Docket # 114 at 20–21.) He only disputes whether Convergent's procedures were reasonably adapted to avoid such errors.

At the time this letter was sent, Convergent's procedure was to rely on clients to inform them how consumers would recognize their names in correspondence. As an initial matter, Heisler argues that Convergent's reliance on information from the client about how to identify the client is insufficient to satisfy § 1692k(c) because Krueger did not testify specifically that this was Convergent's procedure for ensuring that the name of the creditor is understandable to the unsophisticated consumer as required by the FDCPA. (Docket # 114 at 20.) But I am not aware of any specific language a Rule 30(b)(2) witness must use to indicate that procedures were specifically adapted to avoid such errors where the evidence shows that they were, so Heisler is not persuasive on this point.

Krueger described the procedure for "onboarding" a new creditor-client as including an implementation call in which one specific task was to identify a name for the client that was both accurate and recognizable. (Krueger Dep. at 107:23–108:12.) Krueger explained further that FACS had known space limitations for the client name, so Convergent relied on clients to tell them how they wanted the names abbreviated so recipients would understand them. (*Id.* at 79:24–80:20, 83:10–18, 93:15–94:18, 95:14–96:7.) Krueger repeatedly testified about this process: Convergent worked with clients to determine how to identify the client in a manner that was succinct and recognizable. (*Id.*) Draher also testified that a regular part of onboarding a new client was discussing the name to be used on collection letters, including approval of any abbreviation. (Draher Dep. at 14:8–15:3.) It can hardly be

---

only screened for accounts of deceased, those in bankruptcy, and cell phone numbers, and possibly social security number and balance date. (Krueger Dep. at 36:21–38:25, 45:3–17, 52:1–11, 20–24.) None of this would flag any error in the name of the creditor, let alone detect whether it might be confusing to a consumer.

disputed that the creditor is a reasonable source of information about that creditor's name and how consumers will recognize it. It is unclear whether clients or Convergent designed the abbreviations for approval by the other, or whether they collaborated to design the abbreviations, but it does not matter. At the very least, Convergent relied on input from the client about how to abbreviate its name, and that is enough to render its procedure reasonably adapted to ensure that the names used to identify creditors were accurate and clear to consumers.

Undoubtedly, this particular client name revealed a weakness in Convergent's procedure: the FACS system imposed a 22-character limit on creditor names when generating correspondence. But in light of all the evidence, this does not render the procedure unreasonable. The limitation was apparently built into the FACS software, and in most cases, the 22-character limit must not have made the slightest difference. Presumably many client names are shorter than twenty-two characters, and any that were longer would have been abbreviated during onboarding. For some reason, that did not happen with this client. Perhaps it was a genuine oversight. For example, it appears that the abbreviation for this client was originally entered into Convergent's former "Pyramid" software system and then automatically imported into the FACS system later. (Draher Dep. at 32:22–33:2; Krueger Dep. at 113:18–114:17.) Perhaps the old system allowed more characters, resulting in the artificial truncation in the new system. Regardless of the reason for this truncation, no one at Convergent appears to have had reason to think there was a problem until this litigation ensued. Similarly, there is little evidence Convergent should have thought that the abbreviation for this client might be unrecognizable, as Convergent understood the abbreviation to have been either provided to it or approved by the client itself.

The fact that these circumstances revealed a flaw in Convergent's system does not mean that the system was unreasonable. To benefit from the *bona fide* error defense, a defendant need not show that the procedures were *perfectly* adapted to avoid errors of the type alleged, only that the procedures were *reasonably* adapted to do so. *Kort*, 394 F.3d at 538 ("[Section] 1692k(c) does not require debt collectors to take every conceivable precaution to avoid errors; rather, it only requires reasonable precautions."); *Hyman v. Tate*, 362 F.3d 965, 968 (7th Cir. 2004) ("Although [the debt collector] could have done more . . ., § 1692k(c) only requires collectors to adopt reasonable procedures."). Indeed, if the procedures were successful in avoiding all such errors, the defense would be meaningless. In light of all the circumstances, I conclude that Convergent's procedures were reasonably adapted to ensure that letters properly named the creditor.

In addition, Convergent had a computerized, automated system for generating correspondence that it had used for years by the time the letter to Heisler was sent. (PPFOF ¶¶ 18, 23; DPFOF ¶¶ 18, 23; Draher Dep. at 32:22–33:2; Krueger Dep. at 113:18–114:17.) Krueger testified that an initial validation letter like the one sent to Heisler was generated when Convergent's system automatically sent information from the FACS system to the mailing vendor to populate the fields in Convergent's template letter. (Krueger Dep. at 52:12–17, 85:6–87:11, 98:6–99:10.) Using a time-tested automated system to fill a blank with the name of the creditor is undoubtedly a reasonable procedure for ensuring that letters include the proper name of the creditor.

The flaw in this procedure was with the template, which insufficiently conveyed to the recipient who the creditor was. But that flaw does not render Convergent's procedure unreasonable. The uncontroverted evidence is that Convergent used attorney-approved

template language; periodically reviewed this language with general and outside counsel; and updated its template when problems were detected. (Draher Dep. at 23:22–26:14; Krueger Dep. at 98:8–10, 99:18–25, 105:8–14, 105:23–107:3, 128:25–129:3, 143:23–25, 155:13–15, 156:8–157:13.) Even if counsel made an error in legal judgment in approving this particular template,[5] Convergent's active collaboration with counsel to ensure that its letters fulfilled the requirements of the FDCPA was a reasonable step in a process reasonably adapted to ensure that letters clearly identified the creditor as the FDCPA required. Further evidence that this procedure was reasonably adapted to avoid such errors is that when counsel became aware that Convergent's template might actually be confusing or inaccurate, it communicated that to Convergent and recommended a new template. While the procedure did not prevent this particular error, it prompted a change to avoid this error in the future.

Heisler's argument that *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich, L.P.A.*, 559 U.S. 573 (2010), forecloses this argument is unpersuasive. *Jerman* is inapposite. In *Jerman*, the defendant law firm had sent a letter misstating the plaintiff's right to dispute the debt under the FDCPA. The law firm argued that its extensive FDCPA training and compliance procedures were reasonably adapted to avoid such errors. The Court rejected this, holding that the *bona fide* error defense did not excuse mistakes of law. Here, Convergent is not trying to excuse a misstatement of the law in its letter. More to the point, Convergent's reliance on counsel for template language was just one feature of a procedure reasonably

---

[5] For example, it is unclear whether counsel was provided a full template letter on Convergent letterhead with all the line items (including the "Re:" line); from the deposition testimony, it appears that counsel only saw the language in the body of the letter. (Docket # 109-8 at 122.) If this was the case, counsel ought to have requested the full template letter before approving the language, as the clarity of this language depended on other information on the letter.

adapted to avoid errors of this type. I do not read *Jerman* as forbidding consideration of counsel-approved templates as one part of an overall reasonable procedure for avoiding FDCPA violations.

Convergent's system was indeed imperfect. Despite its flaws, however, Convergent's processes—which included reliance on clients to inform them how consumers would recognize their names and use of an automated mailing process to pull that information from the computer system for input into an attorney-approved template—were part of a system that was reasonably adapted to ensure that letters both properly identified the creditor and did so in a manner that was not false, misleading, or deceptive.

Because I conclude that any FDCPA violation alleged in this case occurred despite the maintenance of procedures reasonably designed to avoid such errors, and it is undisputed that any such violation was unintentional and the result of a *bona fide* error, Convergent is entitled to summary judgment in its favor on all of Heisler's claims.

### 5. *Renewed Motion to Certify Class and Motion to Dismiss Class Claims*

As a general matter, motions for class certification are to be decided before summary judgment. *Collins v. Vill. of Palatine, Ill.*, 875 F.3d 839, 845 (7th Cir. 2017) (citing *Cowen v. Bank United of Tex., FSB*, 70 F.3d 937, 941 (7th Cir. 1995)). However, a court may decide a defendant's dispositive motion first—in fact, the Seventh Circuit looks favorably on this approach. *Costello v. BeavEx, Inc.*, 810 F.3d 1045, 1057 n.3 (7th Cir. 2016); *see also Collins*, 875 F.3d at 845 (upholding dismissal that mooted motion for class certification and reiterating that a judge may dismiss a case on summary judgment without first ruling on the plaintiff's motion to certify a class (citing *Costello*, 810 F.3d at 1057 n.3)). Because summary judgment

in Convergent's favor renders class certification moot, I will deny Heisler's renewed motion to certify a class and Convergent's motion to dismiss class claims as untimely.

## CONCLUSION

Convergent is entitled to summary judgment on Heisler's claims under § 1692e and § 1692e(10) because the letter was not plainly confusing and Heisler has not shown extrinsic evidence of consumer confusion. Furthermore, although Convergent violated § 1692g(a)(2) by failing to name the current creditor in its dunning letter, Convergent is not liable for the error because it was an unintentional, *bona fide* error, and occurred despite procedures reasonably adapted to ensure that the letter clearly identified the creditor. Because I am disposing of these claims on the merits, the motions for class certification and to strike class claims are moot and will be denied as such.

**NOW, THEREFORE, IT IS ORDERED** that Convergent's motion for summary judgment (Docket # 99) is **GRANTED**.

**IT IS FURTHER ORDERED** that Heisler's renewed motion for class certification (see Docket # 98) is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that Convergent's motion to strike class claims as untimely (Docket # 116) is **DENIED AS MOOT**.

The clerk of court will enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 16th day of March, 2020.

BY THE COURT:

*s/Nancy Joseph*
NANCY JOSEPH
United States Magistrate Judge